# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDELL SWINSON,              )
             **Plaintiff**        )
        **v.**               )    **C.A. No. 07-26 Erie**
                        )    **District Judge McLaughlin**
**DEPARTMENT OF CORRECTIONS, et al.,**  )    **Magistrate Judge Baxter**
            **Defendants.**    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that:

    1.    The Motion to Dismiss filed by Defendant Peter Longstreet, M.D. [Document # 76] be granted; and

    2.    The Motion to Dismiss filed on behalf of the DOC Defendants [Document # 94] be granted in part and denied in part.

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's claims against Defendants Faulk, Hirz, Blakely, Reilly, Bender, Vanderlip, Gibbs, Fies, Armeni, Sullivan, Balos, Gilmore, Caldwell, Gilbert, Sutter, White, Fullum, Boughner, Severo, and Patterson be dismissed in their entirety, as Plaintiff has failed to serve said Defendants within 120 days, in accordance with the requirements of Rule 4(m) of the Federal Rules of Civil Procedure.

## II.    REPORT

### A.    Relevant Procedural History

On February 21, 2007, Plaintiff Lindell Swinson, a prisoner formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania[1] ("SCI-Albion"), originally filed this civil

---

[1]

Plaintiff is presently incarcerated at the State Correctional Institution at Graterford , Pennsylvania.

rights action pursuant to 42 U.S.C. § 1983 against the following Defendants: Stewart Greenleaf, a Senator of the Commonwealth of Pennsylvania ("Greenleaf"); the Pennsylvania Department of Corrections ("DOC"); Jeffrey Beard, Secretary of the DOC ("Beard"); William Stickman, Deputy Secretary of the DOC ("Stickman"); Marilyn S. Brooks, former Superintendent at SCI-Albion ("Brooks"); Sgt. Christopher, a corrections officer at SCI-Albion ("Christopher"); and Sgt. Palko, a corrections officer at SCI-Albion ("Palko"). [Document # 17].

On September 13, 2007, Plaintiff filed an amended complaint dropping Greenleaf, DOC,[2] Beard, and Stickman as Defendants in this case, and adding the following new Defendants: Ronald J. Bryant, a corrections officer at SCI-Albion ("Bryant"); Michael Farnan, Esquire, an attorney with the DOC's Office of Chief Counsel ("Farnan"); Nancy A. Giroux, Deputy Superintendent at SCI-Albion ("Giroux"); Richard M. Hall, Deputy Superintendent at SCI-Albion ("Hall"); Michael R. Clark, Corrections Classification and Program Manager at SCI-Albion ("Clark"); Rod Showers, a Unit Manager at SCI-Albion ("Showers"); C.O. Gaines, corrections officer at SCI-Albion ("Gaines"); Sgt. Schaef, a corrections officer at SCI-Albion ("Schaef"); C.O. Claudio, a corrections officer at SCI-Albion ("Claudio"); Bryan Flinchbaugh, a counselor at SCI-Albion ("Flinchbaugh"); Bradley Foulk, Esquire, District Attorney for the City of Erie, Pennsylvania ("Foulk"); Elizabeth Hirz, Esquire, Assistant District Attorney for the City of Erie, Pennsylvania ("Hirz"); Patty McKissock, hearing examiner at SCI-Albion ("McKissock"); Tammy Young, a Unit Manager at SCI-Albion ("Young"); Mrs. Anderson, a psychologist at SCI-Albion ("Anderson"); C.O. Luciani, a corrections officer at SCI-Albion ("Luciani"); Dr. Peter Longstreet, a psychiatrist under contract to perform psychiatric services for inmates at SCI-Albion ("Longstreet"); Mr. W. Patz, a psychologist at SCI-Albion ("Patz"); C.O. Harvey, a corrections officer at SCI-Albion ("Harvey"); C.O. Pangborn, a corrections officer at

---

[2] The Court notes that the DOC was never terminated as a Defendant on the docket; however, there is no question that the DOC was not included as a Defendant in the Amended Complaint, and should have been terminated from this case once the Amended Complaint was docketed.

SCI-Albion ("Pangborn"); and C.O. Stewart, a corrections officer at SCI-Albion ("Stewart"). [Document # 31].[3]

Approximately one month later, on October 15, 2007, Plaintiff filed a second amended complaint, adding the following new Defendants: C.O. March, a corrections officer at SCI-Albion ("March"); Maxine Overton, Health Care Administrator at SCI-Albion ("Overton"); Lt. Knapp, a corrections officer at SCI-Albion ("Knapp"); and Cpt. Coleman, a corrections officer at SCI-Albion ("Coleman"). In response to this second amended complaint, the DOC Defendants[4] filed a motion to dismiss, arguing that (i) Plaintiff failed to exhaust his administrative remedies and, alternatively (ii) Plaintiff failed to state a claim upon which relief may be granted. [Document # 38].

In response to the DOC Defendants' motion, Plaintiff filed a motion for leave to amend complaint on January 4, 2008, seeking to add a number of new Defendants and claims. [Document # 53]. After a telephone hearing on January 23, 2008, this Court issued an Order granting Plaintiff's motion to amend to the extent Plaintiff sought to add new Defendants that he omitted from his previous amendments, but denying said motion to the extent Plaintiff sought to add new facts or claims, because Plaintiff failed to attach the proposed amendment and, thus, failed to apprise the Court of the nature and extent of any new facts or claims he may have intended to add. The new Defendants added by Plaintiff were Ms. Blakely, a staff member at SCI-Albion ("Blakely"); Mr. Reilly, Chief Psychologist at SCI-Albion ("Reilly"); and several corrections officers at SCI-Albion, identified as: C.O. Bender, C.O. Vanderlip, C.O. Gibbs, C.O. Fies, C.O. Armeni, C.O. Sullivan, Lt. Balos, Lt. Gilmore, Lt. Caldwell, Lt. Gilbert, Lt. Sutter, Lt.

---

[3]

The docket indicates that Plaintiff failed to serve Defendants Foulk and Hirz, and no appearance has been entered by any attorney on their behalf.

[4]

The DOC Defendants consist of all Defendants other than Defendants Longstreet, Faulk, and Hirz.

or Capt. White, Capt. Fullum, Capt. Boughner, Sgt. Severo, and C.O. Patterson.[5]  As part of the same Order granting Plaintiff's request to add these Defendants, this Court ordered Plaintiff to serve them; however, the docket indicates that Plaintiff failed to make any effort to serve these new Defendants.

Subsequently, during a telephone hearing held by this Court on February 7, 2008, Plaintiff voluntarily dismissed the following Defendants from this case:  Giroux, Hall, Clark, Showers, Schaef, Claudio, Flinchbaugh, Young, Anderson, Luciani, Patz, Harvey, Pangborn, Stewart, March, Overton, Knapp, and Coleman. [Document # 71].  As a result, the only Defendants left in this case who have been properly served are:  Brooks, Palko, Bryant, Farnan, Gaines, Christopher, McKissock, and Longstreet.

On February 26, 2008, Defendant Longstreet filed a motion to dismiss Plaintiff's second amended complaint, contending that Plaintiff has failed to state a claim against him upon which relief may be granted. [Document # 76].  Despite having ample time to do so, Plaintiff has not filed any response to this motion.

In light of Plaintiff's frequent addition and subtraction of multiple DOC Defendants in this case since the filing of the DOC Defendants' motion to dismiss second amended complaint [Document # 38], this Court issued an Order dismissing said motion without prejudice to the remaining DOC Defendants' right to restate all or part of said motion in response to Plaintiff's pertinent allegations against them. [Document # 89].  The remaining DOC Defendants – Brooks, Palko, Bryant, Farnan, Gaines, Christopher, and McKissock – subsequently filed a "motion to dismiss Plaintiff's third amended complaint"[6] [Document # 94], essentially incorporating by

---

[5]

A review of the docket indicates that the Clerk never added the new Defendants to the caption of this case.

[6]

The Court notes that the DOC Defendants refer to Plaintiff's motion for leave to amend complaint [Document # 53] as his "third amended complaint," even though it has never been docketed as such.  Since no new allegations were set forth  against the newly-added Defendants in Plaintiff's motion [Document # 53], this  Court has not construed the motion as a "third amended complaint" but, instead, merely considers the new Defendants as having been added

reference, on their behalf, the arguments raised in the previous motion to dismiss filed at Document # 38.[7]  Despite receiving extensions of time to file a response to said motion, Plaintiff has failed to do so.  This matter is now ripe for consideration.

### B.       Relevant Factual History[8]

_____On or about October 28, 2006, Plaintiff had an anxiety attack, which he attributes to post-traumatic stress disorder. (Document # 34, Second Amended Complaint, at p. 9, ¶ 1).  To get help, Plaintiff pressed the call button to have his cell opened and then went to the guards' desk to have Defendant Christopher call a nurse or counselor. (Id.).  In response, Defendant Christopher instructed Plaintiff to return to his cell. (Id. at ¶ 3).  A short time later, Plaintiff left his cell to speak to another security guard under the guise of a call out for religious service. (Id. at ¶ 4).  The unidentified security guard told Plaintiff to return to his block and a Lieutenant would be sent to see him. (Id. at ¶ 5).  After returning to his block, Plaintiff asked Defendant Christopher why he wouldn't assist him, in response to which Defendant Christopher allegedly warned Plaintiff that, if he acted up, Christopher would "slam [him] on the dayroom floor." (Id. at p. 10, ¶ 7).  As a result, Plaintiff filed a grievance against Defendant Christopher, which was denied. (Id. at ¶¶ 8-9).  In addition, Plaintiff filed a private criminal complaint against Defendant Christopher. (Id. at ¶ 10).

Allegedly as a result of the actions taken by Plaintiff against Defendant Christopher, Defendant Palko pushed Plaintiff forcefully into another inmate's cell, causing Plaintiff to spill

---

to Plaintiff's second amended complaint.

[7]

The DOC Defendants also assert, *inter alia*, that Plaintiff's claims against the new Defendants added as a result of Plaintiff's motion for leave to amend complaint [Document # 53], should be dismissed as a result of Plaintiff's failure to serve them or, alternatively, Plaintiff's failure to allege the personal involvement of any of said Defendants.

[8]

The factual history herein is taken directly from Plaintiff's Second Amended Complaint, but only to the extent the allegations pertain to the remaining DOC Defendants and/or Defendant Longstreet.

his coffee on the other inmate. (Id. at pp. 10-11, ¶ 11). Defendant Palko then wrote a misconduct against Plaintiff for threatening another inmate. (Id. at ¶¶ 11-12). As a result of the misconduct, Plaintiff was sanctioned to sixty (60) days in solitary confinement, although he was only required to serve half the time. (Id. at p. 11, ¶ 13).

When Plaintiff was released from solitary confinement, the guards immediately began "harassing [him] ...by refusing to give him grievances, request slips or cash slips." (Id. at ¶¶ 14-15). Plaintiff alleges that he again began having panic attacks "due to Dr. Longstreet ripping his medication away from him (for no apparent reason)." (Id. at p. 12, ¶ 16). As a result, Plaintiff pushed his call button, causing Defendant Christopher to appear at his cell, at which time Christopher allegedly threatened to "slam" Plaintiff if he acted up and ordered him to stop pushing the call button. (Id.). When Plaintiff persisted, he was assessed a misconduct and sanctioned to thirty (30) days of solitary confinement. (Id. at ¶¶ 16-18). Plaintiff claims that he was again released after serving only half the time in solitary confinement, at which time Defendant Christopher allegedly continued threatening him and "making unnecessary comments," which caused Plaintiff to have more anxiety attacks. (Id. at ¶ 19). Plaintiff claims that every time Defendant McKissock saw him, "she found him guilty and threatened him, 'if you come before me, even for a piece of fruit, I'll give you the maximum amount of time permitted by the DOC." (Id at p. 13, ¶ 20).

While in J-Unit, Plaintiff spoke to Defendant Bryant about the conduct of "the security personnel," but Defendant Bryant agreed with their conduct and stated "what do you expect for having a complaint in court against DOC." (Id. at p. 14, ¶ 24). Plaintiff alleges that he received a false misconduct prior to every T.R.O. hearing before this Court. (Id. at ¶ 25). When Plaintiff would attempt to find comfort in the psychology department, but Defendant Longstreet would "just laugh at [him] or increase his medication asserting that [he] was paranoid." (Id. at ¶ 26). Plaintiff alleges that Defendant McKissock denied him the right to have witnesses at a misconduct hearing and sentenced him to cell restriction. (Id. at ¶ 27).

6

Plaintiff states that he wrote Defendant Farnan to "stop the law and constitutional violation," but "they only grew worse, more threats, even security personnel laughing stating [they would] fabricate a misconduct if [he] file[d] a grievance." (<u>Id</u>. at p. 15, ¶ 28). After Plaintiff was moved to SCI-Albion's A-B Unit, Defendant Gaines would "threaten [him] with false misconducts if he did not help the officers or drop the lawsuit." (<u>Id</u>. at p. 16, ¶ 32).

### C.    Remaining Claims

Construing Plaintiff's allegations in the most favorable light, it appears that Plaintiff has made the following claims against the remaining DOC Defendants and/or Defendant Longstreet:

1.    "The acts of the security personnel having private phone conversations with the hearing examiner, out of the presence of the Plaintiff, and every time finding him guilty violated Plaintiff's rights and constituted conspiracy and a due process violation under the 14th Amendment..." (Second Amended Complaint at p. 20, Count 7).

2.    "The act of the hearing examiner finding the Plaintiff guilty every time without any evidence violated Plaintiff's rights and constituted malicious prosecution, illegal seizure and a due process violation under the 4th, 8th, 6th, 14th Amendments..." (<u>Id</u>. at p. 21, Count 8).

3.    "The acts of writing false misconducts against the Plaintiff 'all of sudden after he filed a complaint against the prison' violated Plaintiff's rights and constituted retaliation and cruel and unusual punishment, illegal seizure under the 4th, 8th, and 14th Amendments..." (<u>Id</u>., Count 9).

4.    "The acts of repeatedly filing misconducts (false ones) placing Plaintiff in segregation, and continuously on cell restriction, clearly violates his rights and constitutes cruel and unusual punishment under the 8th Amendment..." (<u>Id</u>. at p. 22, Count 13).

5.    "The act of failing to provide properly trained staff to interact with the Plaintiff, and using violence to subdue and control Plaintiff, clearly constitutes cruel and unusual punishment under the 8th Amendment..." (<u>Id</u>., Count 14).

6.    The act of refusing to grant Plaintiff counsel witnesses and placing him in solitary confinement violated his rights and constitute illegal seizure, cruel and unusual punishment, and a due process violation under the 4th, 8th, 14th Amendments..." (<u>Id</u>., p. 23, Count 16).

7.  "The act [of] Dr. Longstreet of taking Plaintiff's medications away from him,... violated Plaintiff's rights... under the 8th Amendment..." (Id., Count 17).

8.  "...security used excessive force and retaliated against Plaintiff for using administrative proceedings..., thus violating the 8th Amendment" (Id., Count 19).

9.  "... [Defendant] Christopher made threats and [Defendant] Brooks overlooked... constitut[ing] conspiracy, negligence and violat[ing] [Plaintiff's] rights [under] the 8th Amendment..." (Id. at p. 24, Count 20).

As relief for his claims, Plaintiff seeks monetary damages, as well as injunctive and declaratory relief.

## D.    Standards of Review

### 1.    Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id., 127 S.Ct. at 1973 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944

(3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. <u>See</u> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) <u>citing</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. <u>Twombly</u>, 127 S. Ct. at 1965 <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." <u>Id.</u>, 127 S.Ct. at 1974.

<u>**2.**</u>    <u>*Pro Se* **Pleadings**</u>

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>Boag v. MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Bierley</u>, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); <u>Smith v. U.S. District Court</u>, 956 F.2d 295 (D.C.Cir. 1992); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir.1997). <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is

a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### E.     Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted.*

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[9]     The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the

---

[9]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

applicable procedural rules, including deadlines. <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." <u>Id.</u>

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. <u>Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. <u>Id.</u>

Here, the DOC Defendants assert that "Plaintiff admits that he has failed to exhaust administrative remedies with regard to his claims, arguing that exhaustion is not required under 42 U.S.C. § 1985," citing page 25 of Plaintiff's second amended complaint. (See Document # 38 at p. 7). Page 25 of Plaintiff's second amended complaint contains the heading "Exhaustion of Legal Remedies," and reads as follows:

> I, Lindell Swinson, used to [sic] prison appeal procedure, wrote request slips to staff, filed grievances, however the only derivative was more harassment. Furthermore, I had a T.R.O. hearing with Hon. Chief Magistrate Judge Mrs. Susan Paradise Baxter. However, the T.R.O. was denied and the prison upon information and belief was ordered to move the Plaintiff, due to harassment. However, compliance with state administrative procedures is not required in a suit under 42 U.S. 1985(3) dealing with conspiracy. See: Scolnick vs. Winston, 219 F.Supp. 836. Furthermore, in pursuant to Brennan v. Farmer, 114 S.Ct. 1970 a [sic] individual does not have to wait to be subject to further persecution, whether it is sadistic psychological warfare or just a vicious case of harassment to seek shelter/relief in court.

(Document # 34, page 25). The Court does not believe the foregoing statement may be construed as an admission by Plaintiff that he failed to exhaust his administrative remedies. However, even if Plaintiff's statement could somehow be construed as an admission, the DOC Defendants cannot simply rely upon their interpretation of Plaintiff's allegations regarding the steps he may or may not have taken to resolve his administrative grievances, as Plaintiff is not required to

plead exhaustion with particularity. <u>Kertes</u>, 285 F.3d at 297. Instead, it is the burden of a defendant asserting the exhaustion defense to plead and prove it. <u>Id.</u> This the Defendants have failed to do. Accordingly, Defendants' motion to dismiss the complaint based upon Plaintiff's alleged failure to exhaust administrative remedies must be denied.


### F.      Discussion

#### 1.      Fourth Amendment Claims

         Plaintiff has made various vague and conclusory claims that his being found guilty of "false misconducts" and being placed in solitary confinement somehow violated his Fourth Amendment right to be free from illegal search and seizure. (Second Amended Complaint at pp. 21 and 23, Counts 8, 9, and 16). The United States Supreme Court has held that the Fourth Amendment has no applicability to prison cells. <u>Hudson v. Palmer</u>, 468 U.S. 517, 536 (1984); <u>see</u> <u>also</u> <u>Doe v. Delie</u>, 257 F.3d 309, 316 (3d Cir. 2001)("The *Hudson* court confirmed that the Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration"). Thus, Plaintiff is unable to maintain a claim based upon the Fourth Amendment, and the same should be dismissed.


#### 2.      Sixth Amendment Claim

         Plaintiff claims that "[t]he act of the hearing examiner finding the Plaintiff guilty every time without any evidence" violated his rights under the Sixth Amendment. The Sixth Amendment provides, in pertinent part:

> [i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."

U.S. Const. Amend VI.

         By its express terms, the guarantees of the Sixth Amendment are applicable only to "criminal prosecutions." <u>Kirby v. Illinois</u>, 406 U.S. 682, 690 (1972). "It is well established that prison disciplinary proceedings are not 'criminal prosecutions' as that term is used in the Sixth

Amendment." <u>Warcloud v. Horn</u>, 1998 WL 126917 (E.D.Pa. Mar. 17, 1998), <u>citing</u> <u>United States v. Gouveia</u>, 704 F.2d 1116, 1121 (9th Cir, 1983).  Furthermore, the Supreme Court has held that confrontation and cross-examination of witnesses are not required in prison disciplinary proceedings and are matters left within the sound discretion of prison officials.  <u>Wolf v. McDonnell</u>, 418 U.S. 539, 567-69 (1974)("If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls").

Based on the foregoing authority, therefore, Plaintiff's Sixth Amendment claim must fail.

### 3.      Eighth Amendment Claims

Plaintiff claims that one or more of the Defendants violated his Eighth Amendment rights by:  (i) writing and finding him guilty of allegedly false misconducts and then placing him in segregation, cell restriction and/or solitary confinement (Second Amended Complaint at pp. 21-24, Counts 8, 9, 13, and 16); (ii) using excessive force to subdue and control him (Second Amended Complaint at pp. 22-23, Counts 14 and 19); (iii) taking his medications away from him (Second Amended Complaint at p. 23, Count 17); and (iv) making verbal threats against him (Second Amended Complaint at p. 24, Count 20).  Each of these categories of alleged Eighth Amendment violations will be considered in turn.

### a.      "False" Misconducts and Disciplinary Custody

Plaintiff claims that Defendants Palko and Christopher violated his Eighth Amendment rights when they issued allegedly false misconduct charges against him, and that Defendant McKissock violated his Eighth Amendment rights by finding him guilty of the misconducts and having him placed in various forms of disciplinary custody.

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)  An

13

objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>see</u> <u>also</u> <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410, 419 (3d Cir. 2000); <u>Young v. Quinlan</u>, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. <u>Farmer,</u> 511 U.S. at 837.

Under the objective prong of the test for an Eighth Amendment claim, false misconduct charges are not "sufficiently serious" that they result in "the denial of the minimal civilized measure of life's necessities." <u>Rhodes</u>, 452 U.S. at 347. Indeed, false misconduct charges do not constitute the denial of "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." <u>Young</u>, 960 F.2d at 364. Thus, Plaintiff's allegations of false misconduct charges fail to state an Eighth Amendment violation. Moreover, being placed in various forms of disciplinary custody also fails to constitute an Eighth Amendment violation. <u>See</u> <u>Gibson v. Lynch</u>, 652 F.2d 348, 352 (3d Cir. 1981), <u>cert.</u> <u>denied</u>, 462 U.S. 1137 (1983)("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment"). As a result, Plaintiff's Eighth Amendment claims arising from allegedly false misconducts and his confinement in disciplinary custody should be dismissed.

### b.     Excessive Use of Force Claim

"In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm." <u>Wilson v. Shannon</u>, 982 F.Supp. 337, 340 (E.D.Pa. 1997), <u>citing</u> <u>Hudson v. McMillian</u>, 503 U.S.

1, 7 (1992). However, *de minimis* uses of physical force are excluded from constitutional recognition, provided that the use of force is not "'repugnant to the conscience of mankind.'" Whitley v. Albers, 475 U.S. 312, 327 (1986), quoting, Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Reyes v. Chinnici, 54 Fed. Appx. 44, 48 (3d Cir. 2002)("[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically").

Here, Plaintiff claims that Defendant Palko pushed him forcefully into another inmate's cell, causing Plaintiff to spill his coffee on the other inmate. (Second Amended Complaint at pp. 10-11, ¶ 11). Plaintiff does not claim to have suffered any injury as a result of this incident.

The absence of a serious injury to the inmate is relevant to this Court's inquiry as to whether excessive force was used. Hudson, 503 U.S. at 7. Moreover, the Eighth Amendment "does not protect an inmate against an objectively *de minimis* use of force." See Walker v. James, 2007 WL 210404 at *8 (E.D.Pa. Jan. 23, 2007), citing Smith v. Mensinger, 293 F.3d 641, 649 (#d Cir. 2002). Allegations of far more force than Plaintiff has alleged have been deemed *de minimis* and dismissed. See, e.g., Reyes, 54 Fed. Appx. at 48 (where corrections officer punched inmate in the shoulder to avoid being spit on); Thomas v. Ferguson, 361 F.Supp.2d 435, 439-41 (D.N.J. 2004)(finding that, "[e]ven if proven to be true and for no necessary purpose, Defendants' alleged conduct... does not meet the Constitutional standard for a claim of a malicious and sadistic use of force 'repugnant to the conscience of mankind,'" where inmate alleged he was punched and shoved by corrections officers); Wilson v. Reinhart, 2003 WL 21756393 (D.Del. Jul. 29, 2003)(where officer sprayed inmate in the face with mace).

Here, Plaintiff's allegations of being forcefully pushed into another inmate's cell, without injury, fails to describe a use of force that is "repugnant to the conscience of mankind." Indeed, such a use of force is objectively *de minimis* and insufficient to establish an Eighth Amendment violation. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Palko for excessive use of force should be dismissed.

### c.     Removal of Medication

Plaintiff claims that Defendant Longstreet took away his medication "for no apparent reason." (Second Amended Complaint at ¶ 21).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[10] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

Here, Plaintiff simply claims that Defendant Longstreet removed his medication for no apparent reason; however, Plaintiff later claims that Longstreet "tampered" with his medication on one occasion and, at other times, increased his medication. These vague

---

[10]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

allegations fail to allege either a serious medical need for the undisclosed medication or deliberate indifference to such need on the part of Defendant Longstreet. At most, the allegations illustrate Plaintiff's disagreement with the course of treatment he was being given, which does not sustain a cognizable Eighth Amendment claim. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976). As a result, Plaintiff's Eighth Amendment claim against Defendant Longstreet should be dismissed.

### d. Verbal Threats

Plaintiff claims that Defendant Christopher threatened to "slam him" on a number of occasions, and that Defendant Gaines threatened to give him a false misconduct if he did not "help the officers or drop the [instant] lawsuit." (Second Amended Complaint at p. 24, Count 20, and p. 16, ¶ 32). Assuming these claims are true, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983. See Wright v. O'Hara, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004)("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit")(citations omitted); MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995)("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); Murray v. Woodburn, 809, F.Supp. 383, 384 (E.D.Pa. 1993)("Mean harassment ... is insufficient to state a constitutional deprivation")(listing cases). Thus, Plaintiff's Eighth Amendment claims based upon the verbal threats of Defendants Christopher and Gaines should be dismissed.

### 4. Fourteenth Amendment Due Process Claims

Plaintiff claims that Defendants Palko and Christopher violated his Fourteenth Amendment right to due process when they issued allegedly false misconduct charges against him, and that Defendant McKissock violated his due process rights by refusing to allow him to call witnesses at disciplinary proceedings, and by finding him guilty of the misconducts and

having him placed in disciplinary custody. (Second Amended Complaint at pp. 20-23, Counts 7, 8, 9, and 16). These claims are without merit.

Initially, the filing of a misconduct, even if later proven to be false, "is not a constitutional violation so long as the inmate is provided with due process." Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992), cert denied, 510 U.S. 829 (1993)(citations omitted). In this case, it appears from Plaintiff's allegations that he was properly notified of the charges associated with each misconduct and was afforded a hearing regarding each of the misconducts. Thus, Plaintiff was provided with all due process to which he was entitled. As a result, Plaintiff's claims that Defendants Palko and Christopher wrote frivolous misconduct reports against him are not cognizable under the Fourteenth Amendment and should be dismissed.

As to Plaintiff's complaints regarding the time he has spent in disciplinary custody, the Supreme Court has held that a prisoner's state created liberty interest is limited to those situations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Supreme Court considered the question of whether segregated confinement implicated a constitutional liberty interest and concluded that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. See also Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (placement of a prisoner in administrative custody for a period of 15 months did not impose atypical and significant hardship on prisoner and, thus, did not deprive due process rights). Thus, the fact that Plaintiff has been found guilty of numerous misconducts and sanctioned to various forms of disciplinary custody does not implicate a violation of a constitutional liberty interest under the Fourteenth Amendment. Moreover, Defendant McKissock's refusal to allow Plaintiff to call witnesses at his misconduct hearings did not violate his due process rights, since Plaintiff did not have a liberty interest to protect. Rivers v. Horn, 2001 WL 312236 at *2 (E.D.Pa. Mar. 29, 2001). Accordingly, Plaintiff's Fourteenth Amendment due process claims against

18

Defendant McKissock should be dismissed.

### 5. Conspiracy Claims

The DOC Defendants have moved to dismiss the conspiracy claims against them because Plaintiff has failed to state his claims with the particularity required by the Federal Rules of Civil Procedure.

As a general matter, § 1983 claims need not be pled with any greater particularity than any other claims. <u>See</u> Fed.R.Civ.P. 8. However, conspiracy claims must be pled with sufficient particularity to provide the defendants with fair notice of the claims against them. <u>Loftus v. Southeastern Pa. Transp. Auth.</u>, 843 F.Supp. 981, 986 (E.D. Pa. 1994). "While the pleading standard under [Federal Rules of Civil Procedure] 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements." <u>Johnson v. Kafrissen</u>, 1995 WL 355289, *2 (E.D. Pa. 1995). <u>See</u> <u>also</u> <u>Williams v. Frame</u>, 821 F.Supp. 1093, 1096 (E.D.Pa. 1993), <u>quoting</u> <u>Kalmanovitz v. G. Heileman Brewing Co.</u>, 595 F.Supp. 1385, 1400 (D.Del. 1984), <u>aff'd</u>, 769 F.2d 152 (rd Cir. 1985)("A general averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient").

"To state a cause of action for conspiracy, the complaint must allege the following: (1) combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) overt act done in pursuance of common purpose; and (3) actual legal damage. <u>Guthrie v. Bradley</u>, 2008 WL 4279805 (W.D.Pa. Sept. 15, 2008), <u>citing</u> <u>Brown v. Blaine</u>, 833 A.2d 1166 (Pa.Cmwlth. 2003)(citation omitted). The mere assertion that prison officials engaged in a civil conspiracy is not enough. <u>Brown</u>, 833 A.2d at 1173 n. 16.

Here, Plaintiff alleges that (i) unidentified "security personnel" conspired with the hearing examiner (presumably Defendant McKissock) through private phone conversations conducted out of his presence (presumably before or during misconduct hearings), which allegedly resulted

in him being found guilty of misconduct each time in violation of his Fourteenth Amendment rights; and (ii) Defendant Christopher made verbal threats, which were overlooked by Defendant Brooks, apparently as a co-conspirator, in violation of his Eighth Amendment rights. (Second Amended Complaint at pp. 20 and 24, Counts 1 and 20). These allegations are insufficient to establish cognizable conspiracy claims.

With regard to the first conspiracy claim, Plaintiff has sufficiently alleged a combination of two or more persons (the unnamed "security personnel" and the hearing examiner) acting with the common purpose of finding Plaintiff guilty of allegedly false misconducts. Thus, Plaintiff has satisfied the first two prongs of a conspiracy claim. Nevertheless, the claim fails to allege actual legal damages, as it has already been determined that being found guilty of even "false" misconducts "is not a constitutional violation so long as the inmate is provided with due process," as the Plaintiff was in this case. Flanagan, 783 F.Supp. at 931. Thus, Plaintiff cannot satisfy the third prong of his first conspiracy claim and the same should, therefore, be dismissed for failure to state a claim upon which relief may be granted.

The second conspiracy claim alleges a combination of two persons, Defendants Christopher and Brooks, acting together; however, the "common purpose" of their alleged enterprise is far from clear. The most that can be gleaned from Plaintiff's allegations is that the alleged "common purpose" was the making and/or allowance of verbal threats against Plaintiff. Construed as broadly as possible, these allegations barely satisfy the first prong of a conspiracy claim. The second prong is equally troublesome. While Defendant Christopher's "overt act" of making verbal threats is clear from Plaintiff's allegations, Defendant Brooks' alleged act of overlooking Defendant Christopher's threats is more covert than overt. That being said, even if this Court determines that Plaintiff has met the first two prongs of his second conspiracy claim, he, again, has failed to allege actual legal damages, as verbal threats alone are insufficient to establish a constitutional deprivation. As a result, Plaintiff's second conspiracy claim should be dismissed for failure to state a claim upon which relief may be granted.

## 6.    Retaliation Claims

Plaintiff claims that he suffered many adverse consequences at the hands of various Defendants in retaliation for filing the instant lawsuit and/or using the prison administrative process.  In particular, Plaintiff claims that the following named Defendants unlawfully retaliated against him for exercising his constitutional rights, in the following ways:  (i) Defendants Christopher and Palko repeatedly wrote false misconducts against him, and placed him in segregation or under cell restriction; (ii) Defendant McKissock threatened him by stating, "if you come before me, even for a piece of fruit, I'll give you the maximum amount of time permitted by the DOC;" (iii) Defendants Christopher and Gaines made verbal threats against him; (iv) Defendant Palko forcefully pushed him into anther inmate's cell, causing him to spill coffee on the other inmate; and (v) Defendant Longstreet "laugh[ed] at him or increase[d] his medication asserting that [he] was paranoid" when Plaintiff visited the psychology department.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials[11]; and

3) his constitutionally protected conduct was a substantial or motivating factor in

---

11

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225.  See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

the decisions to discipline him.[12]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### a.       Constitutionally Protected Activity

The Court finds that Plaintiff has met the first prong of his retaliation claims, as filing lawsuits and accessing the prison administrative process are constitutionally protected activities. See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997)(finding that the filing of a lawsuit is protected activity); Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000)(holding that an inmate has a right under the First Amendment to file grievances against prison staff).

---

12

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

### b.     Adverse Action

To satisfy the second prong, Plaintiff's allegations regarding the actions of Defendants must rise to the level of adverse action; in other words, Plaintiff's allegations must be sufficient to demonstrate that the alleged actions would deter a person of ordinary firmness from engaging in the protected activity of filing a grievance.  "Unless the claimed retaliatory action[s] [are] truly 'inconsequential,' the plaintiff's claim should survive a motion for judgment as a matter of law." Tate v. Donovan, 2003 WL 21978141 at *4 (E.D.Pa. Aug. 14, 2003), citing, Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002).

With regard to Plaintiff's first retaliation claim, this Court finds that a reasonable jury could determine that the filing of allegedly "false"misconducts, which resulted in Plaintiff being sanctioned to disciplinary confinement, would be sufficient to deter a person of ordinary firmness from engaging in constitutionally protected activity.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2002)(holding that prisoner's allegation that he was falsely charged with misconducts in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)(holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).  Furthermore, the allegedly retaliatory acts of being forcefully pushed into another inmate's cell and having medication increased are not "truly inconsequential" acts, and may be found sufficient to deter a person of ordinary firmness from engaging in constitutionally protected activity.  As a result, Plaintiff has satisfied the second prong of his retaliation claims arising from such acts.

The same cannot be said, however, for Plaintiff's complaints of verbal threats by Defendants Christopher, Palko, and McKissock, as verbal threats do not constitute adverse action for purposes of a retaliation claim.  See Reid v. Wakefield, 2007 WL 954179 at * 4 (W.D.Pa. Mar. 28, 2007), citing Bartelli v. Lewis, 2005 WL 2406048 at * 2 (M.D.Pa. Sept. 29, 2005)("we determine that verbal threats do not constitute an 'adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim").  As a result, Plaintiff's retaliation claims against

Defendants Christopher, Palko, and McKissock, arising from their alleged verbal threats against him, should be dismissed.

### c.    Causal Connection

To satisfy the third prong of his retaliation claims, Plaintiff must allege a causal connection between the exercise of his constitutional rights and the Defendants' adverse actions. Plaintiff's allegations make clear that the filing of the original complaint in this matter, as well as the filing of grievances and accessing this Court for T.R.O. hearings, occurred within, at least, a temporal proximity of the alleged false misconducts, which suggest a causal link sufficient to satisfy the third prong of Plaintiff's retaliation claims against Defendants Christopher and Palko . See Allah v. Al-Hafeez, 208 F.Supp.2d at 535. However, there is no alleged causal link between Plaintiff's exercise of his constitutional rights and Defendant Longstreet's alleged retaliatory act of increasing Plaintiff's medication. As a result, the third prong of Plaintiff's retaliation claim against Defendant Longstreet has not been satisfied and the claim should be dismissed.

Based on the foregoing analysis, therefore, Plaintiff has sufficiently stated prima facie cases of retaliation against Defendants Christopher and Palko, for filing allegedly "false" misconducts and having him placed in disciplinary custody, and against Defendant Palko, for forcefully shoving Plaintiff into another inmate's cell.

The burden thus shifts to the Defendants to demonstrate, by a preponderance of the evidence, that they would have taken the same adverse actions (i.e., filed the challenged misconducts, etc.) regardless of Plaintiff's exercise of his constitutionally protected rights. This they are not able to sustain at this stage of the proceeding.

As a result of the foregoing, Plaintiff's retaliation claims against Defendants Christopher and Palko, for filing allegedly "false" misconducts and having him placed in disciplinary custody, and against Defendant Palko, for forcefully shoving Plaintiff into another inmate's cell, should be allowed to proceed at this time. All other retaliation claims against Defendants Christopher, Gaines, McKissock, and Longstreet, should be dismissed.

### 7.     Claim Against Defendant Farnan

Plaintiff alleges that he wrote Defendant Farnan, Chief Counsel for the DOC, to "stop the law and constitutional violation[s]" at SCI-Albion, but that "they only grew worse...." (Second Amended Complaint at ¶ 27).  Given the vague nature of these allegations, the legal basis for Plaintiff's claim against Defendant Farnan is unclear.  Regardless, the law is clear that Defendant Farnan, in his capacity as the DOC's Chief Counsel, is not a state actor for purposes of imposing liability under 42 U.S.C. § 1983.  See Elliott v. Dorian, 2007 WL 120031 (W.D.Pa. Jan. 10, 2007)(holding that DOC's Chief Counsel was not a "state actor" for purposes of inmate's § 1983 claim), citing Briscoe v. LaHue, 460 U.S. 325, 330 n. 6 (1983).  As a result, Plaintiff's claim against Defendant Farnan should be dismissed.


### 8.     Unserved Defendants

The Prison Litigation Reform Act provides that:

> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;  or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A.  Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so.  Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at  28 U.S.C. §§ 1915A, 1915(e) and  42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory  provisions with respect to actions brought by prisoners who are proceeding in forma pauperis.  See 28 U.S.C. §1915(e)(2)[13].  Under this

---

[13]

Title 28 U.S.C. §1915(e)(2) provides:  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against

provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

As noted earlier, the following Defendants were never served in this case, in contravention of this Court's orders, and none of them has had an attorney enter an appearance on his or her behalf: Foulk, Hirz, Blakely, Reilly, C.O. Bender, C.O. Vanderlip, C.O. Gibbs, C.O. Fies, C.O. Armeni, C.O. Sullivan, Lt. Balos, Lt. Gilmore, Lt. Caldwell, Lt. Gilbert, Lt. Sutter, Lt. or Capt. White, Capt. Fullum, Capt. Boughner, Sgt. Severo, and C.O. Patterson As a result, the foregoing Defendants should be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they were not served within 120 days of the date(s) they were added as Defendants in this case.


**III.     CONCLUSION**

For the foregoing reasons, it is respectfully recommended that:

1.      The Motion to Dismiss filed by Defendant Peter Longstreet, M.D. [Document # 76] be granted; and

2.      The Motion to Dismiss filed on behalf of the DOC Defendants [Document # 94] be granted in part and denied in part, as follows:

---

a defendant who is immune from such relief."

a.      The motion should be denied with regard to Plaintiff's retaliation claims against Defendants Christopher and Palko, based on their filing of allegedly "false" misconducts and having Plaintiff placed in disciplinary custody, and against Defendant Palko, for forcibly shoving Plaintiff into another inmate's cell. These claims are the only claims that should proceed in this case.

b.      The motion should be granted with regard to all other claims raised by Plaintiff.

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's claims against Defendants Faulk, Hirz, Blakely, Reilly, Bender, Vanderlip, Gibbs, Fies, Armeni, Sullivan, Balos, Gilmore, Caldwell, Gilbert, Sutter, White, Fullum, Boughner, Severo, and Patterson be dismissed in their entirety, as Plaintiff has failed to serve said Defendants within 120 days, in accordance with the requirements of Rule 4(m) of the Federal Rules of Civil Procedure.

The only Defendants who should remain in this case are Defendants Christopher and Palko. All other Defendants should be dismissed from this action.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge


Dated: December 1, 2008

cc:      The Honorable Sean J. McLaughlin
        United States District Judge