IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDELL SWINSON,          )<br>          Plaintiff          )<br>     v.                              )<br>                                      )<br>DEPARTMENT OF CORRECTIONS, et al.,     )<br>          Defendants.       ) | C.A. No. 07-26 Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that Defendants' Motion for Summary Judgment [Document # 118] be granted.

**II.    REPORT**

  **A.    Relevant Procedural History**

On February 21, 2007, Plaintiff Lindell Swinson, a prisoner formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania[1] ("SCI-Albion"), originally filed this civil rights action pursuant to 42 U.S.C. § 1983 against the following Defendants: Stewart Greenleaf, a Senator of the Commonwealth of Pennsylvania ("Greenleaf"); the Pennsylvania Department of Corrections ("DOC"); Jeffrey Beard, Secretary of the DOC ("Beard"); William Stickman, Deputy Secretary of the DOC ("Stickman"); Marilyn S. Brooks, former Superintendent at SCI-Albion ("Brooks"); Sgt. Christopher, a corrections officer at SCI-Albion ("Christopher"); and Sgt. Palko, a corrections officer at SCI-Albion ("Palko"). [Document # 17].  Plaintiff subsequently filed two amended complaints [Document ## 31 and 38], and added and deleted several Defendants through additional written and oral motions. [Document ## 53 and 71].

---

[1] Plaintiff is presently incarcerated at the State Correctional Institution at Graterford , Pennsylvania.

In consideration of motions to dismiss filed on behalf of all Defendants who had been properly served in this matter, this Court issued a Report and Recommendation on December 1, 2008, recommending dismissal of the vast majority of Plaintiff's claims and the Defendants against whom they were made. [Document # 109]. In addition, this Court recommended dismissal of all Defendants who had not been served within 120 days, in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. (Id.). On January 5, 2009, District Judge Sean J. McLaughlin adopted this Court's recommendation and dismissed all of Plaintiff's claims and the Defendants against whom they were made, except for the following: (i) Plaintiff's retaliation claim against Defendants Christopher and Palko, based on allegations that they filed "false" misconducts against Plaintiff and had him placed in disciplinary custody; and (ii) Plaintiff's retaliation claim against Defendant Palko based on the allegation that Defendant Palko forcibly shoved Plaintiff into another inmate's cell. [Document # 111].

The parties have since conducted discovery, after which Defendants Christopher and Palko filed a Motion for Summary Judgment, arguing that Plaintiff has failed to exhaust his administrative remedies and/or has failed to adequately support his retaliation claims. [Document # 118]. Despite having been granted ample time to do so, Plaintiff has failed to file a direct response to Defendants' motion. This matter is now ripe for consideration.

### B.     Relevant Factual History[2]

On or about October 28, 2006, Plaintiff had an anxiety attack, which he attributes to post-traumatic stress disorder. (Document # 34, Second Amended Complaint, at p. 9, ¶ 1). To get help, Plaintiff pressed the call button to have his cell opened and then went to the guards' desk to have Defendant Christopher call a nurse or counselor. (Id.). In response, Defendant Christopher instructed Plaintiff to return to his cell. (Id. at ¶ 3). A short time later, Plaintiff left his cell to

---

[2] The factual history herein is taken directly from Plaintiff's Second Amended Complaint, but only to the extent the allegations pertain to the remaining claims against Defendants Christopher and/or Palko.

2

speak to another security guard under the guise of a call out for religious service. (Id. at ¶ 4). The unidentified security guard told Plaintiff to return to his block and a Lieutenant would be sent to see him. (Id. at ¶ 5). After returning to his block, Plaintiff asked Defendant Christopher why he wouldn't assist him, in response to which Defendant Christopher allegedly warned Plaintiff that, if he acted up, Christopher would "slam [him] on the dayroom floor." (Id. at p. 10, ¶ 7). As a result, Plaintiff filed a grievance against Defendant Christopher, which was denied. (Id. at ¶¶ 8-9). In addition, Plaintiff filed a private criminal complaint against Defendant Christopher. (Id. at ¶ 10).

Allegedly as a result of the actions taken by Plaintiff against Defendant Christopher, Defendant Palko pushed Plaintiff forcefully into another inmate's cell, causing Plaintiff to spill his coffee on the other inmate. (Id. at pp. 10-11, ¶ 11). Defendant Palko then wrote a misconduct against Plaintiff for threatening another inmate. (Id. at ¶¶ 11-12). As a result of the misconduct, Plaintiff was sanctioned to serve sixty (60) days in solitary confinement, although he was only required to serve half the time. (Id. at p. 11, ¶ 13).

When Plaintiff was released from solitary confinement, the guards immediately began "harassing [him] ...by refusing to give him grievances, request slips or cash slips." (Id. at ¶¶ 14-15). Plaintiff alleges that he again began having panic attacks "due to Dr. Longstreet ripping his medication away from him (for no apparent reason)." (Id. at p. 12, ¶ 16). As a result, Plaintiff pushed his call button, causing Defendant Christopher to appear at his cell, at which time Christopher allegedly threatened to "slam" Plaintiff if he acted up and ordered him to stop pushing the call button. (Id.). When Plaintiff persisted, he was assessed a misconduct and sanctioned to thirty (30) days of solitary confinement. (Id. at ¶¶ 16-18).

As a result of the foregoing, Plaintiff raises the following claims:

1. "[Defendants Christopher's and Palko's] acts of writing false misconducts against the Plaintiff 'all of sudden after he filed a complaint against the prison' violated Plaintiff's rights and constituted retaliation..." (Id., Count 9).

2. "[Defendant Palko] used excessive force and retaliated against Plaintiff for

3

using administrative proceedings..." (Id., Count 19).

As relief for his claims, Plaintiff seeks monetary damages, as well as injunctive and declaratory relief.

### C.     Standards of Review
#### 1.     Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a

genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### 2.     *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir.

1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D.     Exhaustion
#### 1.     The Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002).  See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  Administrative exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies.  Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3]     The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis,

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 93-94 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

### 2.    The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[4] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated

---

[4] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

> objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust the administrative remedies within the DOC's grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the DOC inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate. The first step in the grievance process is for the inmate to file a claim with the institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

### 3. Exhaustion and Procedural Default Applied

Defendants argue that Plaintiff has failed to exhaust his administrative remedies. In particular, Defendants contend that Plaintiff supports his surviving claims through the submission of two grievances that are attached to his Complaint – grievance numbers 167975

and 169556. Defendants then argue that neither of these grievances was appealed beyond the Initial Review stage of the administrative process. In support of this argument, Defendants have submitted the Affidavit of Leilani Sears, an Administrative Officer II in the DOC Secretary's Office of Inmate Grievances and Appeals, who certifies the following:

> 6. At the request of the Pennsylvania Attorney General, I have reviewed the grievance records of inmate Lindell Swinson, inmate number GN-4641.
>
> 7. Specifically, I was asked to review the appeal status of grievances 167975 and 169556.
>
> 8. According to information obtained from the computer database, I have determined that grievance number 167975 was rejected, and was not resubmitted or appealed beyond that point (i.e., was neither appealed to the Facility Manager not to Final Review).
>
> 9. Similarly, I have determined that grievance number 169556 was denied on Initial Review, and, likewise, was not appealed beyond that point.

(Declaration of Leilani Sears attached as Exhibit 1 to Document # 118, Defendants' Motion, at ¶¶ 6-9). Plaintiff has failed to present any argument or evidence to counter either Defendants' argument or Ms. Sears' Declaration. Thus, it is clear from the record that Plaintiff has failed to exhaust his administrative remedies with regard to the surviving claims at issue in this case. Moreover, in light of the fact that the challenged events took place during the latter part of 2006, Plaintiff has undoubtedly procedurally defaulted on his claims. Accordingly, Plaintiff's remaining claims are not properly before this Court and should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants Motion for Summary Judgment [Document # 118] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the

objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: October 16, 2009

cc: The Honorable Sean J. McLaughlin
United States District Judge